178 N.J. Super. 465 (1981)
429 A.2d 422
GABRIELA SMELKINSON, PLAINTIFF-APPELLANT,
v.
ETHEL & MAC CORPORATION, A NEW JERSEY CORPORATION, D/B/A MAC DONALD'S BEACH, HERBERT WARD, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1981.
Decided April 20, 1981.
*467 Before Judges ALLCORN, PRESSLER and FURMAN.
Joseph M. Levinsohn argued the cause for appellant.
Robert V. Haines argued the cause for respondent Herbert Ward (Harwood, Lloyd, Ryan, Coyle, Wulster & Griggs, attorneys; John D. Allen, III, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
Plaintiff Gabriela Smelkinson appeals from an order denying her leave to amend her complaint to seek personal injury protection benefits (PIP) pursuant to the New Jersey Automobile Reparation Reform Act (No-Fault Law), N.J.S.A. 39:6A-1 et seq. It appears that if plaintiff is not entitled to relief from that order, she will be irrevocably barred from recovering her considerable medical expenses. We have concluded that considerations of fairness and equity, consistent with our rules of procedure, require that relief should not be here withheld.
In July 1974 plaintiff was a business invitee on the premises of defendant Ethel and Mac Corporation, the operators of a recreational facility. While sunbathing she was struck by an automobile owned and operated by defendant Herbert Ward and insured by Gateway Insurance Company. She sustained several fractures as a result of the accident and has incurred medical expenses of approximately $4,500.
Suit was commenced in May 1976 against both Ward and the Ethel and Mac Corporation. The claim as against the corporation was ultimately settled and that party is not here involved. With respect to defendant Ward, plaintiff was unable to effect personal service upon him by reason of his unknown whereabouts and consequently obtained an order pursuant to R. *468 4:4-4(i) permitting substituted service to be made on Ward's insurance carrier.[1] The complaint against Ward recited the basic foregoing facts regarding the occurrence of the accident as well as plaintiff's incurring of substantial medical expenses, and demanded judgment compensating her for all her damages. An answer was filed by the carrier on Ward's behalf and the matter proceeded routinely through pretrial discovery.
Shortly before trial plaintiff's attorney, who had represented her throughout, apparently realized for the first time that the No Fault Law, enacted in 1972, had an effect on the common-law automobile negligence action insofar as medical expenses are involved. His response to this realization was the motion here in question whose gravamen was the seeking of an order amending the complaint to assert a right of PIP benefits directly against Ward and to bifurcate trial of the PIP claim and the general damages claim. The motion was denied. Plaintiff and Ward thereafter settled the general damages claim by entry of final judgment expressly preserving plaintiff's right to appeal from the denial of her motion to amend.
The controlling and elementary propositions respecting plaintiff's claim for her medical expenses are perfectly clear. Her status when the accident occurred was that of a pedestrian, defined by N.J.S.A. 39:6A-2(h) as "any person who is not occupying a vehicle propelled by other than muscular power." N.J.S.A. 39:6A-4 requires every automobile liability policy to provide for the payment by the carrier of designated PIP benefits, regardless of fault, to specified categories of persons having particularly described relationships to the named insured or the insured vehicle, including "pedestrians sustaining bodily *469 injury caused by the named insured's automobile." Plaintiff was thus absolutely entitled to the recovery of PIP benefits, including her medical expenses, from Gateway as the liability insurer of the vehicle which struck her while she was a pedestrian.[2] It is also clear that the right thus afforded plaintiff by the No Fault Law to recover her medical expenses directly from Gateway was in substitution of her former right to recover them from the insured tortfeasor himself and constituted, moreover, the exclusive remedy insofar as the medical expense claim arose out of the automobile accident. N.J.S.A. 39:6A-12. And see Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 387 (1977); Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, at 562 (1981).
Thus, the proper prosecution of plaintiff's rights would have been by way of a PIP claim directly against Gateway and a negligence action against Ward limited to claim for recovery of those elements of personal injury damages not encompassed by available PIP benefits. It was, of course, the failure of plaintiff's attorney to appreciate these consequences of the No Fault Law which was responsible for the procedural morass with which the trial judge was faced, since even at that point in the litigation plaintiff did not seek to join Gateway or make a direct claim against it, but rather continued under the misapprehension that the tortfeasor was responsible for the medical expenses. The question, then, is whether that misapprehension has rendered plaintiff's PIP claim against Gateway now irretrievable. We think not.
We recognize, first, that since plaintiff's PIP claim arose in 1974, a new and separate action against the carrier would now be barred by N.J.S.A. 39:6A-13.1, which provides a maximum *470 four-year limitations period for the filing of a PIP action.[3] Thus, the preservation of plaintiff's right of action here would require a relation back of her claim against Gateway to the date of her original complaint against Ward. We are, moreover, satisfied that such a relation back is appropriate in the circumstances here.
At the outset it is evident that plaintiff's motion to amend her complaint for the purpose of asserting the PIP claim should also have sought leave to amend for the purpose of adding a party, namely Gateway, as the party liable for payment of the claim. We have no doubt that if that had been the motion, it would have to have been granted and that, moreover, such an amendment would have related back to the date of the original complaint. In our view, the history and philosophy of R. 4:9-3 would have compelled that result. R. 4:9-3, encaptioned "When Amendments Relate Back," provides in its entirety that
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
Prior to the 1969 revision of the court rules, R.R. 4:15-3, the predecessor of R. 4:9-3, provided expressly only for relation back of claims as among persons already parties to the action. *471 Consistent with the underlying philosophy of the rules requiring their construction and application so as to achieve substantial justice on the merits, liberality in the disposition of motions seeking a relation-back claims amendment was mandated. As explained by the Supreme Court in Harr v. Allstate Ins. Co., 54 N.J. 287 (1969),
The rule should be liberally construed. Its thrust is directed not toward technical pleading niceties, but rather to the underlying conduct, transaction or occurrence giving rise to some right of action or defense. When a period of limitation has expired, it is only a distinctly new or different claim or defense that is barred. Where the amendment constitutes the same matter more fully or differently laid, or the gist of the action or basic subject of the controversy remains the same, it should be readily allowed and the doctrine of relation back applied * * * It should make no difference whether the original pleading sounded in tort, contract or equity, or whether the proposed amendment related to the original or a different basis of action. [at 299-300]
The second sentence of R. 4:9-3, permitting relation-back of amendments adding new parties as to whom the statute of limitations may have already run, was added to the rule as part of the general 1969 revision. The evident intention of the provision, consistent with a similar 1966 amendment of Fed.R. Civ.P. 15(c) and the general philosophy of the rule as originally adopted, was to deal expressly with the misidentification problem by prescribing three preconditions for relation-back. First, the amendment must meet the general criterion of the rule vis-a-vis the transactional relationship between the originally pleaded claim and the claim sought to be raised against the new party. Second, the new party must have had, prior to the running of the statute of limitations, such notice of the institution of the action as to enable him, without substantial prejudice, to defend it on the merits when belatedly joined. Third, the new party must have known or should have known that, but for plaintiff's error in identifying the proper party, the action would have been brought against him. See, generally, Aruta v. Keller, 134 N.J. Super. 522 (App.Div. 1975); Rooney v. Coraggio, 95 N.J. Super. 112 (App.Div. 1967), certif. den. 50 N.J. 89 (1967). And see Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111 (1973); Carrino v. Novotny, 78 N.J. 355 (1979).
*472 Clearly, all of these conditions were here met. The PIP claim is not only transactionally related to the general common-law automobile negligence action but, furthermore, the original complaint specifically referred to the incurring of medical expenses and demanded compensatory damages therefor. In respect of the second condition, Gateway had notice of the institution of the action from its very inception, having by court order received substituted service on behalf of its named insured. As to the factor of lack of prejudice in maintaining its defense, all that need be said is that in every respect but the technical one, Gateway had in fact maintained it defense from the commencement of this litigation, having conducted investigation and discovery proceedings which encompassed the extent and nature of plaintiff's injuries, her treatment therefor and the cost thereof.
Finally, it is beyond reasonable dispute that Gateway knew or should have known both of its underlying PIP responsibility to plaintiff and that, but for the error of counsel, the PIP claim would have been made against it. Indeed, we go further. In our view, as soon as Gateway was put on notice of the occurrence of an accident between its named insured and a pedestrian, it was thereby and at the time noticed of its PIP responsibility to plaintiff. Cf. N.J.S.A. 39:6A-5(a). In effect, therefore, plaintiff had become its direct insured vis-a-vis the payment of PIP benefits. We are thus satisfied that the spirit and philosophy of the No Fault Law imposed the affirmative duty upon the Gateway to deal fairly with the plaintiff. And we are further satisfied that the duty of fair dealing, whatever else it may or may not have affirmatively demanded by way of the carrier's conduct, must be deemed to prohibit the carrier's avoidance under these circumstances of its statutorily imposed liability to pay medical expenses. Cf. Bowler v. Fidelity & Casualty Co. of N.Y., 53 N.J. 313, 327-328 (1969).
For these reasons we conclude that plaintiff's motion to amend, despite its patent inadequacy, should not have been denied out of hand. The evident import of the motion was to rectify the original pleading error of improperly demanding the recovery of medical expenses incurred as the result of the *473 accident. It should have been dealt with on that basis rather than on the basis of its technical insufficiency. And, in that context, the amendment should have been allowed with direction that Gateway be named as a party defendant in respect of the PIP claim.
The order appealed from is reversed. We remand to the trial court for entry of an order consistent with this opinion and for such other proceedings in respect of the amended complaint as may be necessary to its final disposition.
NOTES
[1] Gateway by that time had become insolvent and the order provided for service upon its successor, Liability Insurance Guaranty Association, Gateway Account. We do not regard Gateway's insolvency and the consequent assumption of its liableness by its successor as having any pertinent legal effect. For convenience the carrier will therefore be referred to throughout as Gateway.
[2] The undisputed fact is that there was no other extant liability policy affording plaintiff PIP benefits. Gateway would not, however, have been relieved of liability even if there were. See N.J.S.A. 39:6A-11.
[3] We need not be here concerned with the effect of the two-year limitations period also provided for by N.J.S.A. 39:6A-13.1. Compare Danilla v. Leatherby Ins. Co., 168 N.J.Super 515 (App.Div. 1979) with Ochs v. Federal Ins. Co., 177 N.J. Super. 19 (App.Div. 1980), certif. granted N.J. (1981). For the reasons herein set forth, we are satisfied that plaintiff has a viable claim against Gateway which relates back to the date of her original complaint against Ward. That complaint was filed within two years from the date of the accident.